**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| THE NATIONAL SECURITY ARCHIVE FUND, INC.,[1] | ) ) ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. 05-571 (RMC) |
|  | ) |  |
| THE UNITED STATES DEPARTMENT OF THE AIR FORCE, | ) ) |  |
|  | ) |  |
| Defendant. | ) ) |  |

**<u>MEMORANDUM OPINION</u>**

The National Security Archive Inc. ("Archive") sues the Department of the Air Force ("Air Force") for violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 . It alleges that the Air Force's "pattern and practice of mishandling and delaying responses" to its FOIA requests has frustrated its work, hindered the academic community, and subverted reasoned discourse on military issues worldwide.  Compl. ¶ 2.

The Archive "file[s] more than 1,000 FOIA requests annually" and is "the world's largest nongovernmental library of declassified documents." *Id.* ¶ 11.  Between July 1987 and April 2004, the Archive submitted at least 162 FOIA requests to the Air Force, and now seeks to compel production of documents responsive to eighty-two of the "most pressing" of these requests. *Id.* ¶ 13. Virtually all of the documents at issue are, in whole or in part, classified.  The Archive's unprocessed

---

[1]Plaintiff's Motion for Partial Judgment on the Pleadings indicates that its true name is The National Security Archive, Inc., not The National Security Archive Fund, Inc. as set forth in the caption.  The Court adopts Plaintiff's true name in this Memorandum Opinion.

requests range in age from one to eighteen years old; twenty of them are more than ten years old.

Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Mem.") at 1.  Appeals from requests that

have been processed, but denied, have also languished: seven appeals have gone more than two years

without a determination, and the oldest is nine years old.  *Id*. at 2.  The Air Force does not dispute

these facts.

The Archive seeks a declaration that the Air Force has violated FOIA by not handling

its FOIA requests and appeals in a timely manner and that it has engaged in a pattern or practice of

not making timely determinations on the Archive's requests and appeals.  The Air Force disputes

the nature of the appropriate relief.

The Archive has moved for partial judgment on the pleadings,[2] relying on the Answer

filed by the Air Force as conceding Count I of the Complaint in regard to Archive Requests 1, 6, 7,

13, 14, 15, 16, 20, 22, 23, 24, 25, 27, 29, 30, 32, 36, 37, 38, 40, 41, 45, 46, 50, 53, 54, 55, 63, 67, 70,

72, 73, 74, 77, 78, and 81.  It also asserts that it is entitled to declaratory judgment on Count II

because the Air Force concedes that it has failed to make timely determinations on Archive appeals

with respect to Requests 38, 44, 48, 58, 60, 61, 63, 64, and 69.  Finally, it notes that the Air Force

did not contest  that the Archive is entitled to a declaratory judgment on Count III that the Air Force

has violated FOIA by engaging in a pattern or practice of failing to make timely determinations on

Archive FOIA requests and appeals.  *Id*. at 1-2.

Because the parties rely on declarations beyond the pleadings themselves, the Court

treats the Archive's motion for partial judgment on the pleadings as a motion for partial summary

---

[2]The parties agree that some of the Archive's FOIA requests remain at issue, though the pleadings do not specify which requests these are.

judgment.  For the reasons stated below, the Court agrees that partial summary judgment should be entered for the Archive.

## I. BACKGROUND FACTS

Resolution of the pending motion can be more readily achieved by concentrating on the opposition filed by the Air Force. *See* Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Partial Judgment on the Pleadings ("Opp.").  In part, that pleading concedes:

> To be sure, it does not follow [from the nature of the classified documents] that the Air Force's processing of the Archive's requests should take as long as it appears to have done in some instances. . . . [O]ne of the FOIA requests has now been pending more than 18 years, and the others are more than a year old.  Requests processed through the 11th Communications Squadron in particular seem to have been subject to unexplained delays. . . .
>
> It is not our purpose here to attempt to excuse or defend any undue delays that may have occurred in the past . . . [N]either the parties nor the Court are capable of changing how requests were dealt with 17, or 10, or 5, or 2 years ago.

Opp. at 3.  The Air Force essentially admits that the 11th Communications Squadron does not seem to understand the nature of its legal obligations under FOIA.  For instance, Request 14 related to records of the Air Force Directorate of Operations from 1966 to 1968, including documents on "Strategy (General and Limited War)" and "USAF Wartime Plans."  Compl. ¶ 205; Opp. at 16.  "It is counsel's[3] understanding that the Air Force Space Command recommended *in 2003* that the 11th Communications Squadron refer responsive records to the Navy, the Missile Defense Agency, and the Air Staff, and that the 11th Communications Squadron *plans to forward the records*."  Opp. at

---

[3]  The Air Force is represented by the United States Attorney and, more particularly, lawyers in the Federal Programs Branch of the Civil Division of the Department of Justice.

16 n. 4 (emphasis added).  Similarly, Request 40 related to a RAND Corporation study on the

effectiveness of command and control in strategic operations during the mid-sixties.  Compl. ¶ 467;

Opp. at 17.  "Counsel are advised that in 2003 the Directorate of Operations recommended

declassification review by, *inter alia*, a Department of Defense Joint Staff office, and that the 11th

Communications Squadron forwarded the request to that office *on the date of this memorandum*,"

*i.e.*, November 4, 2005.  Opp. at 17 n. 5.

Not only has the 11th Communications Squadron failed completely and utterly to

handle FOIA Requests 6, 7, 14, 15, 16, 22, 23, 25, 29, 30, 32, 36, 40, 41, 45, 46, 53, 55, and 81 on

a timely or appropriate basis, it also failed completely to provide a signed declaration prior to filing

the Opposition.  *See* Opp. at 4-5 ("[A} signed declaration from the 11th Communications Squadron,

a focal point for processing many requests, was not available").[4]   The 11th Communications

Squadron has no defense and has not even attempted to proffer one.  Judgment against it will be

entered, and the Squadron must respond to the Court's order below.

Aside from the admittedly dismal record of the 11th Communications Squadron, the

Air Force defends itself by emphasizing its current efforts to address FOIA requests more promptly.

It informs the Court that it established, on May 10, 2005, an Information Policy Branch, "part of the

---

[4]The Air Force's Opposition also states:

> As noted above, a signed declaration from the 11th Communications
> Squadron was not completed prior to the filing of this memorandum.
> Footnotes setting forth counsel's understanding of the status of these
> requests will be limited to what counsel have been informed were recent
> referrals of some documents to agencies outside the Air Force through
> the 11th Communications Squadron.

Opp. at 15 n.3.

Enterprise Information Services Division, Office of Warfighting Integration and Chief Information Officer." Opp. at 19. A man of few words, Lieutenant General Hobbins, the Air Force's Chief Information Officer, has told the leadership of the Air Force's major commands that the Air Force record on handling FOIA requests has not been "good." *Id.* Colonel Michael Q. Harper heads up the new Enterprise Information Services Division, which has hired a manager "who had been a driving force behind the Army's implementation of a web-based enterprise-wide FOIA tracking system." *Id.* ; *see* Declaration of Michael Q. Harper ("Harper Decl.") ¶ 1. However, this plan awaits funding approval. Harper Decl. ¶ 12. "The pointed message from a three-star general to major command leadership that FOIA requires greater management oversight and emphasis will be reinforced by including FOIA as a special interest item that will be evaluated when Air Force Commands are inspected." Opp. at 20. Col. Harper hopes to "implement greater outreach," Harper Decl. ¶ 7, which may be all that he can accomplish since "the execution of the Air Force [FOIA] program occurs outside" the Enterprise Information Services Division. *Id.* ¶ 5. The Air Force relies entirely on "decentralized execution." *Id.* While "FOIA is a *part of the duties* of two of the positions [under Col. Harper], one person is assigned FOIA policy and operations oversight duties *almost exclusively.*" *Id.* (emphasis added).

The Air Force has not completely ignored its FOIA obligations in response to Archive requests.[5] Indeed, not all documents sought by the Archive remain classified. Request 2 was for

_____

[5]The Air Force lags behind other Services and the Central Intelligence Agency ("CIA"), to whom the Archive has also directed FOIA requests for classified documents. According to the Archive, it filed substantially more requests with the Department of Defense ("DOD") and the CIA in each year between 1987 and 1994 than with the Air Force. Yet at this time, "19.5 percent of the [Archive] requests filed in 1987 with the Air Force remain pending. Only, [sic] 2.3 percent of the requests filed with DOD, 1.3 percent of requests filed with the CIA and 9.8 percent of the requests filed with the Army from that same year remain pending." Pl.'s Reply, Ex. 1,

documents titled "USAF Plans and Policies in South Vietnam and Laos, 1964, Jacob Van Staaveren, 1965," requested in 1988 and refiled in 2004. *Id.* ¶ 12; Compl. ¶¶ 58-68. This document was released on May 6, 2005, in response to this lawsuit, without explanation for the delay. Fuchs Decl. ¶ 12. The document was declassified on February 23, 1982, *id.*, long before it was requested and even longer before it was released.

The Archive sought to negotiate alternative time frames for production of the requested documents, without response from the Air Force. Compl. ¶¶ 22-26. However, it now acknowledges that the Air Force "has clearly made an increased effort to process" its requests in light of the Complaint here. Pl.'s Mem. at 6. Between the time the Complaint and Opposition were filed, the Air Force completed its response to 13 Archive requests. *See* Opp. Ex. 6, Declaration of Huelseman ("Huelseman Decl.") ¶¶ 9, 12.

## II. LEGAL STANDARDS

The Archive moves for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), which provides, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Such a motion "shall be granted if the moving party demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Stewart v. Evans*, 275 F.3d 1126, 1132 (D.C. Cir. 2002) (quotation and citation omitted). Where matters outside the pleadings are presented in a motion for judgment on the pleadings, the court must treat the motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(c).

Under Rule 56, summary judgment must be granted when "the pleadings, depositions,

_____

Declaration of Meredith Fuchs ("Fuchs Decl.") at ¶ 9.

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party that "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

FOIA requires that an agency respond to requests within twenty days, 5 U.S.C. § 552(a)(6)(A)(I), unless the document(s) falls into one of nine exceptions. *See* 5 U.S.C. § 552(b). The agency bears the burden of demonstrating that a FOIA exception applies. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). Upon the expiration of twenty days without an agency determination, the FOIA requester "shall be deemed to have exhausted his administrative remedies," 5 U.S.C. § 552(a)(6)(C)(I), unless the agency provides written notice that it needs an additional ten (10) days because of "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(I). Once the initial twenty days has passed (or as extended by ten days) without an agency determination on the request, the requester can file suit in federal court. The court has "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

Delay beyond the thirty-day limit is permitted only if "the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request," in which case, "the court may retain jurisdiction and allow the agency additional time to

complete its review of the records." 5 U.S.C. § 552(a)(6)(C)(I).  These "unusual circumstances" include:

> (I) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request;
>
> (II) the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or
>
> (III) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.

5 U.S.C. § 552(a)(6)(B)(iii).  "[T]he term 'exceptional circumstances' does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests."  5 U.S.C. § 552(a)(6)(C)(ii).  *See The Wilderness Soc'y v. Dep't of the Interior*, No. 04-0650, 2005 U.S. Dist. LEXIS 20042, at *31-32 (D.D.C. Sept. 12, 2005).  A requester's refusal to reasonably modify the scope of a request or to arrange an alternate time frame after being requested to do so by the agency is a factor in determining whether exceptional circumstances exist.  5 U.S.C. § 552(a)(6)(C)(iii).

An agency also has twenty days to respond to FOIA appeals.  5 U.S.C. § 552(a)(6)(A)(ii).  Failures to process appeals within this statutory time limit give rise to a cause of action in federal court pursuant to 5 U.S.C. § 552(a)(4)(B).

### III.  ANALYSIS

Although it never said as much to the Archive in response to any of its FOIA requests, the Air Force argues to the Court that the Archive's declassification requests present "exceptional

circumstances" and that it is exercising due diligence in responding.  *See* 5 U.S.C. § 552(a)(6)(C)(I) (stating bases on which an agency may take more than 20 days to comply or respond to a FOIA request).  Because the requests require line-by-line review of responsive documents to determine what, if any, portions can be declassified and released, and often require referral to multiple agencies outside the Air Force for the same purpose, the Air Force argues that it cannot be expected to comply with the FOIA 20-day deadline.  In addition, it emphasizes that it *is* being diligent in its efforts now,[6] even though it concedes a lack of due diligence in the past.  Opp. at 22-23; *see id.* at 24 ("[I]t is ultimately beside the point . . . whether the Air Force's record in the past was good, terrible, or indifferent. What matters is whether the Air Force '*is* exercising due diligence" . . . . [O]n the whole[,] the Air Force is now exercising due diligence.").[7]

In its Amended Answer, the Air Force admits that it has failed to complete processing thirty-three of the Archive's FOIA requests on a timely manner[8] and fails to deny its lack of timely processing of three others.[9]  The most recent of these requests was made on March 8, 2004, considerably longer than twenty days ago.  In the usual case, an agency must show both due diligence

---

[6]The Air Force dryly notes that "the process for handling requests routed through the 11th Communications Squadron apparently requires further attention."  Opp. at 23 n.8.

[7] The Amended Answer, unlike the Opposition, advances no defense of exceptional circumstances to justify the delays.  In fact, the Amended Answer notes that in responding to the Archive's FOIA requests, the Air Force did not set forth any circumstances requiring an extension of time.  Am. Answer ¶ 4 ("[I]n some instances defendant invoked extensions of time without explaining the circumstances that required those extensions.").

[8] Requests 6, 7, 14, 15, 16, 20, 22, 23, 24, 25, 27, 29, 30, 32, 36, 37, 38, 40, 41, 45, 46, 50, 54, 55, 63, 67, 70, 72, 73, 74, 77, 78, and 81.  Am. Answer ¶¶ 107, 120, 215, 226, 234, 274, 290, 300, 308, 317, 361, 377, 385, 407, 430, 440, 460, 474, 480, 514, 522, 554, 592, 605, 669, 697, 717, 725, 729, 733, 747, 752, and 767.

[9] Requests 1, 13 and 54.  Compl. ¶¶ 57, 204, 578-84.  Am. Answer ¶¶ 57 and 204.

and exceptional circumstances to earn additional time to handle one or more late FOIA requests. The Archive's request is for a judgment that the Air Force has violated FOIA in the past. The Air Force essentially concedes the point by relying only on its efforts since May 2005. The record demonstrates that the Air Force has indeed failed miserably to handle Archive FOIA requests in a timely manner. Thus, summary judgment for the Archive on Count I will be granted.

The Court does not ignore the Air Force's argument that it is exercising due diligence now. Due diligence is usually demonstrated by serious efforts that result in a demonstrated reduction in the backlog of FOIA requests pending before an agency. *See The Wilderness Soc'y v. Dep't of Interior*, No. 04-0650, 2005 U.S. Dist. LEXIS at *32 (listing reduction of backlog as a requirement); *Elec. Privacy Info. Ctr. v. Dep't of Justice*, No. 02-0063, 2004 U.S. Dist. LEXIS 28485, at *12-13 (D.D.C. Aug. 23, 2004) (same). Since the Air Force only woke up in May 2005 to its need to fulfill its FOIA obligations on a more timely basis, it has not had time to demonstrate the success or failure of its new attention to FOIA. There is reason for concern that its current program will not make the grade: the Air Force continues to rely on decentralized execution, *i.e.*, responsibility to answer FOIA requests is spread as wide as the Air Force is spread. It has not yet assigned a single person, with authority, to oversee FOIA compliance on a full-time basis. Funding to create a web-based program to track FOIA requests is uncertain. In other words, the current program, while a commendable if belated effort, is still in its infancy and has not proved itself to have any mettle when dealing with the Air Force Commands or able to produce real results. It is too little, too late, to provide a defense against Count I of the Complaint.

However, the Court will not order the Air Force to produce the documents it has so jealously guarded for so long. The conclusion that an agency is not entitled to additional time to

respond "does not end the discussion.  It merely leads to the more difficult problem of fashioning a satisfactory remedy." *Donham v. Dep't of Energy*, 192 F. Supp. 2d 877, 833 (N.D. Ill. 2002).  *See Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 620 (D.C. Cir. 1976) (Leventhal, J., concurring) (noting that "there certainly is some room for a court in equity to stay its hand, and to forbear from enforcing a declared right in cases where the defendant is called upon to do the impossible"). Most of the documents are, or were, classified, and those classification decisions must be reviewed before any release decision can be made.  Release of classified documents cannot be ordered without such review and consideration, no matter how dilatory an agency might be. The complexities of the process cannot be gainsaid, involving more than the Air Force itself.  The Archive itself has recognized this problem, submitting successive proposed orders that would declare the Air Force in violation of FOIA and essentially direct the parties to negotiate a timetable for final decisions.

Summary judgment on Count II will also be issued for the Archive.  The Air Force makes no effort to defend its repeated failures to rule in a timely manner on Archive appeals of decisions to withhold requested documents.  The Court finds that it has conceded its violation of FOIA as charged.

In Count III, the Archive requests a declaration that the Air Force has engaged in a pattern or practice of failing to make timely determinations on its FOIA requests and appeals.  The Air Force has chosen not to oppose this request in its brief and the Court finds that it has been conceded as well.

## IV.  CONCLUSION

As indicated, the real issue is not *whether* the Air Force has violated FOIA as partially

alleged in Counts I, II and III, but *what* should now be done to remedy those wrongs.  On November 23, 2005, the Archive filed a proposed order by which it asks the Court to order the Air Force to notify the Archive of the approximate number of pages responsive to the relevant requests, the number of requests ahead of each Archive request, the approximate rate of processing FOIA requests at each subcomponent that is handling Archive requests, the number of appeals ahead of Archive appeals, and the approximate rate of processing FOIA appeals.  With this information, it hopes that the Archive and the Air Force can negotiate a schedule for the Court's approval.  The Air Force has filed no response to the proposed order.

The Court will adopt the proposed order with some adjustments.  Rather than order the Archive and the Air Force to meet and confer "as soon as practicable" on alternative time frames for responding to outstanding requests, the Court sets a date certain for a status conference, orders the parties to meet and confer prior to that date, and orders the Air Force to present in person at the status conference an officer of sufficient rank over the 11th Communications Squadron to have the ability to order that things be done and to achieve results.

A memorializing order accompanies this memorandum opinion.


_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: April 19, 2006

-12-